UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATASHA HALL,<br><br>   Plaintiff,<br><br> v.<br><br>AETNA LIFE INSURANCE COMPANY,<br><br>   Defendant. | Case No. 20-cv-01863-RS<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Dr. Kenneth Light, an orthopedic surgeon, contacted Defendant Aetna Life Insurance Company ("Aetna") in May of 2019 to announce he was no longer certifying Plaintiff Natasha Hall's long-term disability. Aetna investigated Hall's claim and attempted unsuccessfully to follow up with Dr. Light. It soon after terminated Hall's benefits as a result of its conclusion that she was no longer functionally impaired. This action, brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), arises from the termination. For the reasons set forth below, Aetna's motion is granted and Hall's cross-motion is denied.

## II. BACKGROUND

### A. Undisputed Factual Background

Hall worked at City National Bank ("CNB") as a Bank Relationship Manager. In this position, she engaged in outside sales and otherwise drummed up business.[1] At some point during her time at CNB, Hall was transferred from the Walnut Creek branch, close to her home in Orinda,

---

[1] Hall describes her job as requiring forty hours per week of "cognitive analysis, daily computer use, scheduled and impromptu meetings, use of keyboard and telephone all day, occasional lifting, constant up and down sitting, standing, and walking, and travel to customers' businesses." Plaintiff's Motion ("Pl. Mot."). at 1.

to the San Francisco branch. The San Francisco branch refused to accommodate her back condition and denied her requests for a stand-up desk or ergonomic chair and the manager forced Hall to perform non-essential physical tasks. Hall requested a formal FMLA leave of absence effective September 21, 2015 and applied for state disability. In November 2015, she consulted Dr. Light for the first time. He ordered an MRI, which confirmed disc degeneration and herniation. He recommended conservative treatment – pain relievers and potentially an epidural. Hall continued to complain of pain over the next three visits, at which point Dr. Light, by then her treating physician, raised the possibility of surgery.

Aetna approved long term disability benefits until January 7, 2019, when Hall's benefits were first terminated for lack of supporting documentation. Hall sent Aetna the requested records and her benefits were reinstated on January 24, 2019. A few months later, in late May 2019, Dr. Light called Aetna to inform the insurer he was no longer certifying Hall's disability and signed an Aetna form to that effect on May 29, 2019. AR 613. The parties disagree about *why* Dr. Light stopped certifying Hall's disability. Nonetheless, they agree Aetna tried to clarify with Dr. Light why he suddenly stopped certifying Hall's disability but never heard back. Aetna finally terminated Hall's benefits without Dr. Light's input and without conducting a medical examination.[2] Hall exhausted Aetna's internal, administrative process with two appeals, which were denied on June 24, 2019 and April 1, 2020, respectively. In January 2020, the Social Security Administration deemed Hall totally disabled.

**B. Hall's Contentions**

Hall has a long history of back pain. She underwent back surgery for the first time in 2006 and again eight years later. In early 2017 Hall told Dr. Light the pain was worsening and he recommended an MRI. The MRI indicated "interval resolution" of one disc, but her other issues remained. Pl. Mot. at 11. Dr. Light consequently recommended disc replacement surgery.

---

[2] Hall asserts benefits were finally denied May 31, 2019 while Aetna contends the denial was finalized on June 1, 2019.

ORDER
CASE NO. 20-cv-01863-RS

2

In June 2017, Hall told Dr. Light she was two months pregnant and therefore could not undergo surgery. After her baby was born, Hall indicated her pain had worsened. In March 2018 she had another MRI indicating no improvement since a scan in March 2017. On that basis Dr. Light certified her disability and sought to resubmit the surgery to Aetna for approval. He re-certified her disability in January and April of 2019. In April, he indicated Hall would have surgery in the next two months and was scheduled to be seen again in May. After her May 7, 2019 appointment, Hall asserts she "had [a] change in her healthcare insurance and had to stop treatment with Dr. Light after this appointment." Pl. Mot. at 13.[3] Consequently, Dr. Light contacted Aetna and announced he was no longer her treating physician. At the end of May, Dr. Light signed Aetna's form confirming he was no longer certifying her disability.

Hall avers Dr. Light intended to communicate that he was no longer Hall's treating doctor *only* because she briefly lost her health insurance. She emphasizes that no document in the record indicates Dr. Light ever changed his opinion about her disability status. She maintains Aetna had medical records in its possession indicating her condition had not improved such as the "Capabilities and Limitations" worksheets completed by Dr. Light on June 17, 2016 and January 16, 2019, which indicate a range of severe limitations. She also refers to a document titled "Fair Employment & Housing Commission Certification of Health Care Provider" that appears to be from June 10, 2019, on which Dr. Light, or someone from his office, has written: "Please reverse prior notification of disability termination. Patient will continue to be seen by Dr. Kenneth Light. Patient is not released back to work." AR 1222.

**C. Aetna's Contentions**

Benefits commenced March 20, 2016, but Hall delayed scheduling the surgery for over three years. In the meantime, she got married, gave birth to two children, purchased and operated a

---

[3] She invokes no administrative record support nor proffers her own evidence of an insurance change.

yoga studio called Earth & Sea Yoga,[4] and filed a lawsuit against CNB for wrongful termination.

A few days before her preliminary interview with Aetna, Hall commenced a lawsuit against CNB alleging wrongful termination and discrimination in San Francisco Superior Court. *Williams v. City Nat'l Bank*, Case No. CGC-16-553589.[5] In it, she alleged she could perform her job even with her back issues but that CNB refused to provide reasonable accommodations. She specifically stated her "disability would not interfere with her ability to perform the job-related functions of her position." Defendant's Request for Judicial Notice ("RJN") Ex. 1.[6] Hall never voluntarily disclosed the lawsuit to Aetna. She also never volunteered to Aetna anything about her alleged purchase of Earth & Sea Yoga in Lafayette, California in early 2017. Nonetheless, on June 7, 2017, she affirmatively represented that she did not own a business and was not working or earning income in spite of her May 16, 2017 registration of the studio with the California Secretary of State as the only member/manager and the California agent. RJN Ex. 2. In late June 2017, CNB informed Aetna about the lawsuit and the purchase of the yoga studio. When Aetna confronted Hall about the lawsuit and the studio, she downplayed both, specifically denying she played any meaningful role in the yoga business.

From 2016 to 2019, Aetna paid benefits on the assumption Hall would eventually undergo surgery, at which point it would reassess her limitations. In May of 2017, Hall indicated she was waiting for her surgery to be scheduled and that the delay was attributable to insurance issues. In August 2017 she indicated she was waiting for medical clearance to have the surgery, but in March of 2018 Hall admitted for the first time that she had gotten married in the fall of 2016 and given birth in December 2017. On that same call with Aetna, Hall indicated her 14-year-old homeschooled daughter helped care for the newborn and did chores because Hall was unable to

---

[4] Hall claims never to have been the owner of, or meaningfully involved with, the yoga studio.

[5] Williams is Hall's maiden name.

[6] Aetna requests judicial notice of (1) the complaint in Hall's case against CNB in state court and (2) the incorporating documents of Earth & Sea Yoga. Hall does not oppose the request, so both items are hereby noticed.

walk to the bathroom, dress, or bathe without help. Later that month, Aetna requested updated medical records from Dr. Light. At that time, he was still recommending surgery. Three months later, Hall notified Aetna she had been re-approved for disc replacement surgery but was waiting to schedule the surgery when her husband could take time off work. Relying on Dr. Light's ongoing treatment, Aetna continued to pay benefits.

In September 2018, Aetna contacted Dr. Light once again about Hall's surgery. He advised Aetna the surgery had not been scheduled but that Hall was due for a visit in November 2018. As a result of this delay, Aetna conducted a new investigation of Hall's claim, requesting medical records and an updated attending physician statement. Aetna repeatedly attempted to contact Hall and requested other records, like income and business tax returns, but received no response. In January 2019, Aetna terminated the claim for failure to provide requested information.

Immediately following the termination, Hall informed Aetna she'd been working with an accountant but had not received a W-2 or 1099 in connection with the yoga studio. She claimed that her only involvement was check-writing for forty-five minutes each month. She also confirmed that her surgery had been scheduled and blamed the delay on Dr. Light's staffing issues, which he later disputed. Aetna re-opened the claim but advised it would schedule a formal medical review to confirm work capacity if the surgery did not occur by May 2019.

On May 28, 2019 Dr. Light called Aetna and reported that Hall's surgery had been scheduled but later cancelled because she had not returned his office's calls or messages concerning pre-operation visits and preparation. He also stated he would not be renewing her disability extension and completed a form to the same effect. Two days later, Aetna sent a letter to Hall indicating her benefits were being terminated due to her lack of response and a lack of medical documentation supporting her disability. Again, Hall immediately contacted Aetna and asked for reconsideration. She submitted a note from her May 7, 2019 visit with Dr. Light, but Aetna's nurse reviewer determined there was insufficient medical evidence to support functional limitations from light physical tasks. The nurse reviewer noted most of Dr. Light's findings were normal and that Hall's condition did not seem to have worsened since 2017.

Hall formally appealed Aetna's decision on November 14, 2019. She did not submit any new documentation of her medical condition on appeal; she re-submitted the medical records already on file. For the first time, Hall argued her job required her to perform cognitively difficult tasks and her chronic pain, lack of improvement, and narcotic pain medication prevented her from undertaking such tasks. She also indicated she was unable to schedule her surgery in 2019 because she lost her health insurance. Aetna sent the file to a peer reviewer, Dr. Eric Kerstman, for comment. Dr. Kerstman called Dr. Light on three separate occasions but never received a response. He found Hall's medical care was consistent with her diagnosis of chronic low back pain but did not find clinical evidence to support a finding of functional or cognitive impairment from June 1, 2019 onward. Aetna declined to perform a medical exam both because Hall was appealing a past termination of benefits and because current functionality was not being contested by a medical professional.[7]

### D. The Policy

The policy reads: "You will be deemed to be totally disabled when, as a result of disease or **injury**, you are unable to perform with reasonable continuity **the substantial and material acts** necessary to pursue your **own occupation** in the usual or customary way and you are not working in your **own occupation**." AR 1623 (emphasis in original). One's "own occupation" is "[a]ny employment, business, trade, or profession and the **substantial and material acts** of the occupation you were regularly performing for your employer when your period of disability began. **Own occupation** is not necessarily limited to the specific job you performed for your employer." *Id*. at 1628 (emphasis in original). "Your period of disability ends on the first to occur of:

- The date you are not disabled.
- The date you fail to give proof that you are still disabled.

---

[7] Aetna notes Hall had been overpaid $116,836 in benefits after Social Security's retroactive contribution. In March 2020, Aetna requested reimbursement, but Hall has declined thus far. Aetna indicated at the hearing it was not attempting to recover the overpayment at this time.

- The date you refuse to be examined.
- The date you cease to meet the **Care of Physician Requirement** described in the following section. . . ."

*Id*. at 1623 (emphasis in original). The policy clarifies: "You must be under the care of a **physician** until such time that the care will not:

- Improve the condition(s) causing your disability; or
- Prevent a worsening of the condition(s) causing your disability."

*Id.* at 1624 (emphasis in original).

## III. LEGAL STANDARD

The plan administered by Aetna is governed by ERISA. A participant in an ERISA plan may bring a civil action to recover benefits, to enforce rights, or to clarify future rights under the terms of the plan. The parties agree Aetna's decision in this case is subject to de novo review. A court employing de novo review in an ERISA case "simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006). Generally, the court's review is limited to the evidence contained in the administrative record. *Opeta v. Nw. Airlines Pension Plan for Contract Emps.*, 484 F.3d 1211, 1217 (9th Cir. 2007). "In an ERISA case involving *de novo* review, the plaintiff has the burden of showing entitlement to benefits." *Schramm v. CNA Fin. Corp. Insured Grp. Ben. Program*, 718 F. Supp. 2d 1151, 1162 (N.D. Cal. 2010); *see also Richards v. Hewlett-Packard Corp.*, 592 F.3d 232, 239 (1st Cir. 2010) (placing burden on plaintiff to prove disability). "In conducting *de novo* review, a court considers various circumstances when weighing evidence" and "evaluates the persuasiveness of each party's case, which necessarily entails making reasonable inferences where appropriate." *Schramm*, 718 F. Supp. 2d at 1162.

## IV. DISCUSSION

Hall has not made the requisite evidentiary showing to warrant a finding of total disability. Though she bears the burden of demonstrating her entitlement to benefits, she offers very little affirmative proof of her disability at the time of termination. Instead, she presents the historical

ORDER
CASE NO. 20-cv-01863-RS

7

severity of her back issues and argues that without any documentation of resolution or improvement, the withdrawal of Dr. Light's certification does not indicate she can suddenly perform her own occupation. Evidence of past impairment may not, however, form the basis for a finding of disability. *See Nagy v. Hartford Life & Acc. Ins. Co.*, 800 Fed.Appx. 555, 556 (9th Cir. 2020) (upholding a decision to deny benefits under de novo review in part becuase plaintiff's proffered medical records did not address the relevant time period). Moreover, Aetna points out that its early medical reviews are highly deferential to Dr. Light's opinion that Hall needed surgery. Without his endorsement, Aetna could reasonably doubt the severity of Hall's symptoms.

The policy clearly denotes that a period of disability ends on the date a claimant "fail[s] to give proof that [she is] still disabled," or "cease[s] to meet the Care of Physician Requirement," which requires claimants to be under the care of a physician until the care will not improve a condition or prevent it from worsening. AR 1623-24 (emphasis omitted). Hall has not substantiated her allegation that Dr. Light's withdrawal was a consequence of insurance trouble. Further, Dr. Light signed a form confirming he was no longer certifying her disability and subsequently refused to return Aetna's calls during the appeals process. Even assuming a lapse in insurance was, indeed, the cause of Dr. Light's refusal to continue certifying her disability, Hall has also declined to engage, or failed to explain the reasonable absence of, a new treating doctor. In the context of her refusal to submit additional evidence on appeal, an unsigned, handwritten note apparently from Dr. Light's office reinstating care and asserting Hall was not released back to work cannot show total disability. Hall has thus both failed to offer proof of her disability and ceased to meet the physician requirement. On that basis, her motion must be denied.

Hall offers five arguments attacking the procedural soundness of Aetna's review, all of which are unavailing. First, Hall focuses on Aetna's reversal of its approval of her benefits without any recent, documented improvement in her condition. She relies on a Sixth Circuit case for the proposition that cancellation of long-held benefits in the absence of evidence that a claimant's condition has improved is arbitrary and capricious. *See Kramer v. Paul Reverse Life Ins. Co.*, 571 F.3d 499, 507 (6th Cir. 2009). She invokes an Eighth Circuit case for a similar proposition: "[I]n

determining whether an insurer has properly terminated benefits that it initially undertook to pay out, it is important to focus on the events that occurred between the conclusion that benefits were owing and the decision to terminate them." *McOsker v. Paul Revere Life Ins. Co*., 279 F.3d 586, 590 (8th Cir. 2002).

Reliance on these cases is misplaced. Though the quoted line from *McOsker* generally supports Hall's theory, in the same case the court recognized that when "information available to an insurer alters in some significant way," an insurer may reevaluate or "change its mind." *Id*. at 589. Though nothing indicates Hall's condition spontaneously resolved in the two weeks between Dr. Light's last certification and his call to Aetna, a treating physician's sudden announcement that he will not continue to certify a disability is exactly the type of significant alteration contemplated by *McOsker*. Similarly, in *Kramer*, the court found a denial of benefits after five years arbitrary and capricious where the insurer provided "no explanation" for the abrupt about-face. *Kramer*, 571 F.3d at 507. Together with Hall's failure to engage another doctor and her refusal (or inability) to schedule surgery, Dr. Light's disavowal casts doubt on the veracity of Hall's claims of total disability.

Second, Hall argues Aetna improperly failed to consider that Hall was awarded social security benefits. In its final denial of Hall's appeals, Aetna wrote: "We understand that [Hall] has been approved for Social Security Disability (SSD) benefits. However, our disability determination and the SSD determination are made independently and are not always the same. We don't have an explanation for why Social Security made their determination but it may be because of the Social Security Administration (SSA) regulations." AR 590. This was not, Hall argues, the "meaningful[] review" required by the Ninth Circuit. *Cruz-Baca v. Edison Int'l Long Term Disability Plan*, 708 Fed.Appx. 313, 315 (9th Cir. 2017).

Hall presents Aetna's explanation out of context. It contextualized: "For example, SSA regulations require that certain disease/diagnoses or certain education or age levels be given heavier or even controlling weight in determining whether an individual is entitled to SSD benefits. The Long Term Disability Insurance policy does not have these requirements. In

1  addition, Social Security reviews claim files less frequently and it is possible that they have not

2  reviewed your file recently and therefore they may not have the same information that we have in

3  our file." AR 590. While these additional sentences only lightly "grapple" with the award of SSD

4  benefits on a generic level, they suggest that Aetna considered the reasons the decisions may have

5  come out different ways. *See Cruz-Baca*, 708 Fed.Appx at 315; *Glenn v. MetLife*, 461 F.3d 660,

6  671 n.3 (6th Cir. 2006) (noting a difference between *mentioning* a piece of contrary evidence and

7  *discussing* it).

Third, and arguably most importantly, Hall argues Aetna misinterpreted Dr. Light's May 2019 call to Aetna. She insists he only informed Aetna that he was no longer the treating doctor, not that he believed Hall could return to work. Hall asserts Aetna knew what Dr. Light meant, and called him to clarify, but ultimately rushed forward to deny benefits without his response. As discussed above, however, Hall submits no evidence substantiating her claim that she lost or changed her insurance or that Dr. Light's call was directly attributable to an insurance change. Again, the burden rests on the claimant to prove she is entitled to benefits and she has not offered any evidence to counter the reasonable assumption that Dr. Light contacted Aetna because he was no longer comfortable certifying her disability for medical reasons.

Fourth, Hall contends that Aetna may not point to her delay in scheduling, and ultimate failure to undergo, surgery as a reason for denying benefits. *See Elliott v. Life Ins. Co. of North Am. Inc.*, 2019 WL 2970843, at *7 (N.D. Cal. July 9, 2019) ("[T]he Court declines to find [plaintiff's] decision not to undergo [invasive] brain surgery is indicative of a lack of credibility."). While there is an argument to be made that if Dr. Light's withdrawal of his disability certification was, in fact, just a symptom of Hall's gap in insurance coverage, Hall remains medically eligible for serious surgery. This, in turn, supports her contention that she was totally disabled at the time of termination. Without more, however, this fact does not prove that contention by a preponderance of the evidence.

Fifth, Hall argues that the decision to terminate her benefits was improper because it was erroneously based on an unsupported conclusion by a medical consultant contrary to a treating

doctor and without an examination. Hall contends Dr. Kerstman's paper review did not consider Hall's job duties or explain why he "rejected the findings of the physician who had actually examined plaintiff and found plaintiff could not work." Mot. at 20. Furthermore, she argues, Aetna did not conduct its own examination of Hall even though the policy gave Aetna the right to do so. Lastly, Hall insists a "reasoned and deliberate review" should be especially required in cases where the insurer does not physically examine the claimant.

This argument also misses the mark. Both the record review and the examination were optional. Hall does not make any kind of argument, let alone a persuasive one, about why Aetna was required to undertake either one in this instance. Lastly, this argument, as did the previous four, attacks Aetna's process rather than focusing on Hall's entitlement to benefits at the time of termination. Hall has thus failed to show that Aetna's procedures and review were not "reasoned and deliberate."

## V. CONCLUSION

Hall has not demonstrated she is entitled to benefits and her motion must therefore be denied. Aetna's cross motion is granted.

**IT IS SO ORDERED**.

Dated: June 23, 2021

_____
RICHARD SEEBORG
Chief United States District Judge